**Antonio GUDIEL–PAUL, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 00–71697.

INS No. A75–308–940.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2002.*

Decided Feb. 25, 2002.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Before D.W. NELSON, NOONAN and HAWKINS, Circuit Judges.

MEMORANDUM **

Antonio Gudiel–Paul appeals the judgment of the Board of Immigration Appeals (the Board) upholding an Immigration Judge's denial of Gudiel–Paul's applications for asylum and withholding of removal under 8 U.S.C. §§ 1158(a) and § 1231(b)(3). We remand the petition to the Board.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

Gudiel–Paul and his family were members of the Assembly of God Pentecostal Church in rural Guatemala. His father was active in working for the church, telling his family "to talk to everyone about God, to [tell] all the people that didn't know about God." His mother and his brothers and his sisters acted on his father's advice: "we were dedicated to that, to talk to everyone." Their talk caused "problems" with the guerrillas. When Gudiel–Paul was 16, the guerrillas "took my father and my mother, they put them in the kitchen, and they let us out in a room so we were listening, hearing how they were beating my father and my mother in the kitchen." Gudiel–Paul heard shooting and thought that his parents' assailants had killed them. In fact, the guerrillas had beaten his father on the head with such force that his father lost one eye.

In another assault on the family, the guerrillas raped his older sister, Amalia Maria. She bore the child, conceived in the rape. As Gudiel–Paul put it: "I can't forget that because my sister now she has a child that has not a father."

Gudiel–Paul's parents moved the younger children to a neighboring village, leaving behind his older brother Ervin Eduardo. A little later Ervin Eduardo was killed by the guerrillas. His body was found hung from a tree on the ranch his father cared for. A note on his body read that it was a warning for the boy's father.

A mutilated father, a raped sister, a murdered brother—the horrors accumulated. Asylum might well be granted, *see Lopez–Galarza v. INS*, 99 F.3d 954, 961 (9th Cir.1996), except for the Board's adverse credibility determination. Under our precedents, as the Board's own decision acknowledged, Gudiel–Paul should be given the opportunity to explain any inconsistencies noted by the Board in his case. We remand for that purpose.

In passing, we note that the Board decision relied heavily on inconsistencies between Gudiel–Paul's asylum application and his live testimony. In the experience of this court, asylum applications are often perfunctorily prepared by personnel not attentive to the exact words of the applicant and often handicapped by inadequate translation. We assume that the Board's experience has been similar. If it has, the Board's focus should be on the live testimony. At Gudiel–Paul's hearing, the horrifying facts came out slowly not as a rehearsed story but as memories he could not forget. It was the government's cross-examination, for example, that reminded him of the guerrillas' rape of his sister Amalia Maria. We also note that it is established law that minor inconsistencies, not bearing on the heart of the case, do not make a witness perjurious. Indeed it is often the minor inconsistencies that show the basic story is not a fiction but what is really remembered. For almost two thousand years critics have noted the minor inconsistencies among the Four Gospels, but only a determined sceptic will conclude from them that the evangelists were liars.

The petition for review is GRANTED. The case is REMANDED.